KELLEY v. PLANTERS' & MERCHANTS' NAT. BANK.

(Court of Civil Appeals of Texas. March 25, 1911.)

1. BANKS AND BANKING (§ 148*)—DRAFTS— FORGED INDORSEMENT—LIABILITY—NEGLIGENCE.

A purchaser of a draft cannot recover from the drawing bank on the person to whom it was sent forging the payee's indorsement, where the bank warned him against sending the draft to that person, a stranger who represented himself to be the payee's agent.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 440; Dec. Dig. § 148.*]

2. BANKS AND BANKING (§ 148*)—DRAFTS— PAYMENT—NEGLIGENCE.

A bank is not negligent in cashing a draft on an indorsement of one introduced as the owner by a reliable person well known to the bank, and that the bank guarantees the indorsement is immaterial.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–452; Dec. Dig. § 148.*]

3. ACTION (§ 1*)—CAUSE OF ACTION—LOSS BETWEEN INNOCENT PERSONS.

As between two innocent persons, a loss must remain where the chance of business has placed it.

[Ed. Note.—For other cases, see Action, Cent. Dig. § 1; Dec. Dig. § 1.*]

Appeal from Hunt County Court; J. W. Manning, Judge.

Action by J. W. Kelley against the Planters' & Merchants' National Bank. Judgment for defendant, and plaintiff appeals. Affirmed.

Meador & Davis, for appellant. Looney, Clark & Leddy, for appellee.

BOOKHOUT, J. This suit was filed by the appellant, J. W. Kelley, in the county court of Hunt county, Tex., seeking to recover of and from the appellee, the Planters' & Merchants' National Bank, the sum of $500. It is alleged by the plaintiff in his petition that on the 29th day of May, A. D. 1908, defendant executed and delivered to S. F. Bowser, through plaintiff, its draft No. 4,462 in favor of S. F. Bowser for the sum of $500, drawn on the Chase National Bank of New York City. Plaintiff avers: That said draft as above described was sent to one John Hoffman of Little Rock, Ark., whom plaintiff had reason to believe and did believe was the agent of said S. F. Bowser. That said John Hoffman indorsed the name of the payee, S. F. Bowser, on said draft, or that said draft was so indorsed by some other person, at said Hoffman's request, as follows: "Pay to the order of John Hoffman, S. F. Bowser." That said indorsement was not made or signed by S. F. Bowser, the payee of said draft, or by any one authorized by said Bowser to sign same, but that said indorsement was forged and fraudulently made by some other person than the payee of said draft. Plaintiff avers further that John Hoffman cashed the said draft at the American Bank of Little Rock, Ark., which bank sent the draft to the National Bank of Commerce of New York City, who paid same to the American Bank of Little Rock, Ark. That later the National Bank of Commerce presented the draft to the Chase National Bank of New York City, the last-named bank being the original drawee of the draft, and that said draft was taken up and paid by said drawee, who then returned the same to the defendant herein, together with other canceled checks and drafts. That plaintiff herein got possession of said exchange or draft and sent same to S. F. Bowser, the original payee herein, who denied having indorsed said exchange for him. That said S. F. Bowser, payee of said draft, indorsed and assigned all his interest in said draft to this plaintiff as shown by indorsement on the back of said draft. That plaintiff then deposited said draft in his bank for collection, to be forwarded to the Chase National Bank, drawee, which bank refused payment when draft was presented, and refused to accept the said draft on presentation. Wherefore defendant became liable to S. F. Bowser on the execution of said

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

draft or bill of exchange in the sum of $500, which interest has been assigned and transferred to this plaintiff. The defendant, the Planters' & Merchants' National Bank, filed pleadings, consisting, among other things, of general denial, and a plea setting up facts and circumstances alleged to show negligence on the part of the plaintiff, J. W. Kelley, in purchasing and handling the draft in the manner and form he did. The plaintiff further filed a supplemental petition, consisting of exceptions and denials of the facts alleged in defendant's answer. The trial court rendered judgment in favor of defendant, and against the plaintiff, to which action of the court the plaintiff, J. W. Kelley, excepted and perfected an appeal.

The cause was tried by the court without a jury, and conclusions of fact filed as follows:

"(1) On the 29th day of May, 1908, J. W. Kelley procured from the defendant, Planters' & Merchants' National Bank at Commerce, Tex., the following draft, paying therefor the sum of $500: 'The Planters' & Merchants' National Bank. No. 4462. Original. Commerce, Texas, May 29th, 1908. (P. & M. N. B.) Pay to the order of S. F. Bowser $500.00, five hundred and no/100 dollars. To the Chase National Bank, New York, N. Y. [Signed] R. B. Long, Cashier.' Indorsed with pen and ink for five shares of S. F. Bowser Company stock.

"(2) Prior to the time this draft was issued, the plaintiff, J. W. Kelley, had been in correspondence with one John Hoffman of Little Rock, Ark., who was claiming to act as the agent of the S. F. Bowser & Co., a corporation, having its domicile and principal place of business in the city of Ft. Wayne in the state of Indiana. Plaintiff had gone to Little Rock and interviewed said Hoffman, and had entered into a contract with him as the agent of S. F. Bowser & Co. by which plaintiff was to be appointed agent for said company for Texas, Oklahoma, and the Indian Territory with principal office in Dallas, Tex., and plaintiff was to receive $100 per month and certain extra commissions and expenses. Plaintiff was required to subscribe for five shares of stock in said corporation of the par value of $100 each, as a condition precedent to his employment. Plaintiff had returned to Commerce, where he resided at that time, and purchased the draft above mentioned for the purpose of paying for the said corporation stock.

"(3) When the plaintiff went to the defendant bank to purchase the draft in question, he applied to R. B. Long, the cashier, and told him for what purpose he wanted the draft. Mr. Long told him that there were a great many frauds in the country, and that it was dangerous to send the draft directly to Hoffman, as he might not be what he represented himself to be, and that the company itself might not be what it was represented to be; that the safe way to do would be to have the draft sent through the banks to some bank in Little Rock to be delivered only upon the delivery to such bank of the contract and corporation stock contracted for. They discussed the matter for some time, and, after Mr. Long had shown him the risks he would run in taking the course he proposed to take, Kelley left the bank. Later he returned and applied to the bookkeeper, F. N. Sheely, and requested that he issue the draft in question. The bookkeeper, without knowing what had taken place between Kelley and Long, made substantially the same suggestions in reference to how the draft should be sent that Mr. Long had made, but was informed by Kelley that he was satisfied Hoffman was all right, and he proposed to send the draft directly to Hoffman. It was the custom of the cashier to sign in blank a certain number of drafts in the draft book, and the bookkeeper had authority to fill out and sell the drafts when applied to by any one desiring to purchase the same. The bookkeeper filled out the draft in question, Kelley paid him the money for the amount of the draft, and took it and left the bank.

"(4) On procuring said draft the plaintiff forwarded the same directly to John Hoffman at 411 Cumberland street, Little Rock, Ark. This draft was forwarded to him as the agent of S. F. Bowser & Co. Upon receipt of the draft, Hoffman either indorsed, or caused it to be indorsed as follows: 'Pay to the order of John Hoffman. S. F. Bowser.' John Hoffman and wife were at the time boarding with Mrs. T. W. Fisackerly at 411 Cumberland street in the city of Little Rock. They had been boarding with this lady for some time. She was a customer of the American Bank of Little Rock, was well known by it, and was a very reputable woman. In company with her, John Hoffman went to the American Bank in the city of Little Rock, was duly identified by her to the president of the bank as John Hoffman, the owner of the draft. He there signed his name on the back of the draft, and upon the identification mentioned he presented the draft to said bank, and was paid the amount thereof in cash. Said bank indorsed the draft as follows: 'Pay to the National Bank of Commerce, New York, N. Y. or order. All prior indorsements guaranteed. American Bank, Little Rock, Ark. J. F. Walker, Cashier.' This draft was then forwarded by said bank to its correspondent the National Bank of Commerce in New York City. The last-named bank caused the same to be presented to the Chase National Bank upon which it was drawn, and the same was duly paid, and the following receipt indorsed on the back of the same: 'Received payment through New York Clearing House. May 29, 1908. Indorsements guaranteed.'

"(5) By his contract made through Hoffman, Kelley was to begin work immediately for S. F. Bowser & Co., and Hoffman was to

come to Texas in a few days in connection with the establishment of the agency in Dallas. On hearing nothing from Hoffman, Kelley became uneasy, and on the 4th day of June wired S. F. Bowser & Co. of Ft. Wayne, Ind., to know whether or not Hoffman represented it, and was informed by wire the following day that he did not. Kelley then applied to the defendant bank to have payment of the draft stopped, and at his request the cashier, Mr. Long, wired the Chase National Bank not to pay the draft, but was immediately informed by wire that the draft had already been paid by it. Plaintiff then requested said Long to procure for him the original draft, so that he could make claim on the American Bank for the amount of the same. This was done by Mr. Long, and said Long, acting for Kelley, conducted quite a lot of correspondence with the Chase National Bank and others in an effort to procure the money for Kelley. No claim was made by Kelley on the defendant bank, and in all his dealings with it after the issuance of the draft he was merely asking its friendly offices in an endeavor to procure the money from the other banks. On the 9th day of June, 1908, plaintiff made demand in writing on the American Bank of Little Rock in which he stated, 'I, therefore, hold you responsible for the value of the exchange.' He also took the matter up with the sheriff at Little Rock, Ark., and was informed by the sheriff that, if he would come to Little Rock and make complaint or go before the grand jury, Hoffman could be apprehended. He declined to do this on the ground that he had been out enough already, and would not bear the expense. Later, and more than a year ago, plaintiff made demand on the Chase National Bank by letter, claiming that it was responsible to him for the draft. He never made any claim on the defendant bank, and never intimated that it was liable to him on account of the transaction, until just before this suit was brought in January, 1910.

"(6) At the request of Kelley made through the defendant bank, the Chase National. Bank took the matter up with the National Bank of Commerce in New York, and it in turn took the matter up with the American Bank at Little Rock, and was informed by said last-named bank that Kelley had been guilty of such negligence in his dealings with Hoffman that it would not be liable to him or to any one on account of cashing the draft on Hoffman's indorsement. It therefore warned the National Bank of Commerce not to pay any part of the money, and that bank in turn warned the Chase National not to pay any part of the same, and this information was given to Kelley more than a year before the suit was filed.

"(7) In October, 1909, plaintiff caused S. F. Bowser to make the following indorsement on the back of the draft: 'This draft

was issued in my name, without my knowledge or consent. I did not sell or agree to sell any stock for it. I am informed that it was purchased with the money of J. W. Kelley. The indorsement of my name above was not made by me, nor with my authority. This draft is not my property, therefore, pay to the order of J. W. Kelley, without recourse on me. S. F. Bowser.' Draft being returned by Bowser to Kelley, he indorsed it as follows: 'The last above indorsement of S. F. Bowser is guaranteed. J. W. Kelley.' He then presented the same to the First National Bank of Denison, Tex., with the request that it forward said draft to the Chase National Bank for payment. The bank indorsed the draft as follows: 'Pay to the order of any bank or banker—the last two prior indorsements guaranteed.' This bank then caused said draft to be forwarded to its correspondent, the Nation Park Bank of New York. This bank presented the draft to the Chase National Bank for payment on November 13, 1909. The Chase National Bank refused to pay the draft at that time, because it had already paid the same, and because, if the indorsement was forged, Kelley had been guilty of such negligence that he was not entitled to recover from the bank at Little Rock which cashed the draft on the forged indorsement. The draft was never protested, and more than two terms of each of the two district courts in Hunt county, and more than two terms of the county court of said county, were held after payment was first refused by the bank at Little Rock and by the Chase National Bank and before suit was finally filed against the defendant bank in this case.

"(8) When said draft was drawn, the defendant bank had on deposit to its credit in the Chase National Bank in New York City upon which the draft was drawn more than $3,000. This money had been placed there by the defendant bank with the understanding, both express and implied, that all drafts drawn by it on the Chase National Bank should be promptly honored, and paid when presented. The Chase National Bank in paying said draft did so in compliance with this agreement, and intended thereby to accept and pay the draft. It never intended to refuse payment of any draft drawn upon it by the defendant bank while having funds in its possession belonging to the defendant, and the defendant bank never drew or intended to draw at any time any draft to protect which it did not have sufficient funds in the hands of the Chase National Bank to pay when presented.

"(9) When Hoffman presented the check to the American Bank at Little Rock, it paid him the amount of the same. When it presented the same to its correspondent, the National Bank of Commerce in New York, the last-named bank paid it the amount of the same. When the National Bank of Com-

merce presented said draft to the Chase National Bank, it paid said National Bank of Commerce the amount of the same, took up the draft, and charged the amount to the account of the defendant bank. When the defendant bank issued the draft, it immediately credited the same to the account of the Chase National Bank. This was the usual and customary way of dealing with such drafts and transacting such business, and the Chase National Bank has refused at all times, and still refuses, to pay the defendant bank or to credit its account with the amount of said draft, but insists on retaining the money, and has ever since retained the same.

"(10) In cashing the draft for John Hoffman on the indorsements and identifications set out in these findings, the American Bank in Little Rock was not negligent, but acted in accordance with the usual custom of bankers in such transactions, and pursued the customary course of bankers in such cases. It was not guilty of negligence in any respect.

"(11) Kelley was guilty of negligence in dealing with Hoffman as the agent of S. F. Bowser & Co., and in placing in his possession the draft under the circumstances.

"(12) That S. F. Bowser was an entire stranger to each of the banks dealing with the drafts in question, and neither of them knew his signature, or knew him or his company; that they were likewise unacquainted with John Hoffman, or with his signature."

Upon these facts judgment was rendered for defendant.

Briefly stated, the undisputed facts appear to be as follows: On May 29, 1908, the plaintiff, J. W. Kelley, purchased of and from the Planters' & Merchants' National Bank of Commerce, Tex., New York Exchange, being its draft No. 4,462, for $500 This draft was drawn by Planters' & Merchants' National Bank, the drawer, on the Chase National Bank of New York, the drawee and payer, and was made payable to the order of S. F. Bowser, the payee. The draft was sent to John Hoffman at Little Rock, Ark., who either made or had made the following indorsement: "Pay to the order of John Hoffman. S. F. Bowser." And this was done without the knowledge or authority of S. F. Bowser. That John Hoffman cashed said draft at the American Bank of Little Rock, Ark., under said forged indorsement. That the Chase National Bank, in due course, paid the draft. That after the above transactions took place, and about October 22, 1909, S. F. Bowser did indorse said draft without recourse, making it payable to J. W. Kelley, who in turn, and on or about November 13, 1909, made demand on the Chase National Bank of New York for payment of said draft which was refused; and afterwards demand was made on the Planters' & Merchants' National Bank of Commerce for payment thereof, and which demand was refused, and on

or about February 15, 1910, this suit was filed.

[1] It is assigned that the trial court erred in paragraph 11, findings of fact, as follows: "Kelley was guilty of negligence in dealing with Hoffman as the agent of S. F. Bowser & Co., and in placing in his possession the draft under the circumstances"—for the reason that the evidence does not warrant such a finding, and it is contrary to the evidence. The proposition presented is that it is not contributory negligence not to anticipate that another will violate the law in a given particular, and in not providing against such possible violations of it.

It may be conceded that this proposition announces a correct proposition of law. It is not, however, applicable to the facts shown to exist in this case. It is contributory negligence to deal with an entire stranger, claiming to be the agent of another, without requiring some evidence to show his agency, and especially is this true where warning is given in advance by the very person sought to be held for a loss sustained on account of such dealings and the nonexistence of such agency. Appellant and Hoffman, the alleged forger, were entire strangers; appellant residing in Commerce, Tex., and Hoffman in Little Rock, Ark. Although appellant went to Little Rock to see Hoffman, and dealt with him as the agent of S. F. Bowser & Co., of Ft. Wayne, Ind., he neither received nor required any evidence that Hoffman was such agent, except his naked statement that he was. He made no inquiry of any one else, did not communicate with the Bowser Company, and took Hoffman's unsupported word for everything, including the amount of supposed dividends Bowser stock would pay. Appellee's cashier told him not to do it and pointed out an absolutely safe way to proceed. So insistent was appellant's cashier that the course he proposed to take was dangerous that Kelley apparently was convinced, for he left the bank without buying the draft. He returned later, however, and purchased the draft from another official of the bank. The official who sold Kelley the draft likewise advised him the safe course to pursue and warned him against the danger of sending the draft to Hoffman. Kelley disregarded all these warnings and refused to pursue the safe course they insisted that he take. Upon his own responsibility and judgment he sent the draft direct to Hoffman, and the very thing the officers of the bank warned him against caused him to lose the draft. In sending the draft direct to Hoffman, Kelley was guilty of negligence. Smith v. Bank, 6 La. Ann. 610; Levy v. Bank of America, 24 La. Ann. 220, 13 Am. Rep. 124; U. S. v. Bank (C. C.) 45 Fed. 163.

[2] Again, it is contended that the trial court erred in its tenth finding of fact as follows: "In cashing the draft for John Hoffman, on the indorsement and identification set out in these findings, the American

Bank of Little Rock was not negligent, but acted in accordance with the usual custom of bankers in such transactions, and pursued the customary course of bankers in such cases; it was not guilty of negligence in any respect"—for the reason that, according to the undisputed evidence in this case, the indorsement under which the American Bank of Little Rock, Ark., paid the draft, was forged; and said American Bank of Little Rock guaranteed said forged indorsement.

It is insisted that a forged indorsement of a draft is null and void, does not pass title to the paper, and no act of alleged diligence of a bank paying the draft on the forged indorsement will pass title to the paper, and cure the defects of said instrument. This contention is not sustained. The question is not whether a forged indorsement passes title, or whether payment under a forged indorsement is a lawful payment. The question here is: Has the appellant the right to hold appellee liable in view of his negligent conduct and the other facts in the case? It is not negligence for a bank to cash a draft on the indorsement of a person, introduced to it as the owner of the draft by a reliable person well known to the bank, and the fact that the bank guarantees the indorsement is immaterial. Moody v. Bank, 19 Tex. Civ. App. 278, 46 S. W. 661; United States v. Bank (C. C.) 45 Fed. 163.

In the Moody Case, above cited, the evidence showed that the Waco Bank exercised substantially the same care as the Little Rock Bank did in this case. In that case the court said: "The introduction to the Bank of Calhoun by Arnold, a reliable source, was calculated to impress the bank with the belief that they could safely engage in business transactions with Calhoun. This, it appears from the testimony, is the usual means of identification of the party who presents paper for payment; and we cannot say because the bank did not take further steps towards the identification of Calhoun, and to the ascertainment of the genuineness of the signature of Reed Bros., it failed to exercise proper care and diligence in these matters."

The facts show that appellant was negligent in dealing with Hoffman, as Bowser's agent, and in placing in his hands the draft in question over the protest of appellee. The facts further show that the Arkansas bank was not negligent in any respect, and the fact that it guaranteed the indorsement is immaterial. Assuming appellant to have been without fault, the Little Rock Bank was clearly innocent. There is no evidence indicating any sort of negligence on its part, while the record affirmatively shows that it acted in exact accordance with the usual course of experienced business men.

[3] It is held that, where one of two innocent persons must suffer, the loss must remain where the chance of business has placed it. United States v. Bank, supra.

Finding no reversible error in the record, the judgment is affirmed.